IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BYRON YATES, | ) | CASE NO. 1:13-cv-01896 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| | ) | **MEMORANDUM & OPINION** |
| Defendant. | ) | |

Plaintiff Byron Yates ("Plaintiff" or "Yates") seeks judicial review of the final decision of Defendant Commissioner of Social Security ("Defendant" or "Commissioner"), denying his applications for social security disability benefits.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned Magistrate Judge pursuant to the consent of the parties.  Doc. 14.  For the reasons stated below, the Commissioner's decision is **AFFIRMED**.

## I.  Procedural History

Yates protectively filed applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") on July 6, 2010.[1]  Tr. 34, 88, 99, 110, 111, 113, 127, 141, 142, 252.  He alleged a disability onset date of November 25, 2008[2] (Tr. 34, 88, 99, 113, 127, 252) and claimed disability due to uncontrolled Type I diabetes, right foot problems, major

---

[1] Protective Filing Date is defined by the Social Security Administration as:  the date you first contact us about filing for benefits. It may be used to establish an earlier application date than when we receive your signed application. http://www.socialsecurity.gov/agency/glossary/ (last visited 8/15/2014).

[2] At the hearing, Yates's representative requested that the disability onset date be moved to April 2010, the date Yates was diagnosed with Type I diabetes.  Tr. 55.  In response, the Administrative Law Judge, in his decision stated, "[a]lthough the record contains no medical evidence prior to March 2010, I decided not to accept the amended onset date in favor of considering the entire period at issue and avoiding a non-adjudicated period." Tr. 34.

depression, pulmonary artery disease in his legs, and diabetic retinopathy (Tr. 88, 99, 113, 127, 256). After initial denial by the Social Security Administration (Tr. 97-98, 109, 110-11, 148-64), and denial upon reconsideration (Tr. 125, 139, 141-42, 165-78), Yates filed a request for a hearing (Tr. 179-80) and attended a hearing before Administrative Law Judge Frederick Andreas ("ALJ") on March 13, 2012 (Tr. 50-87).

In his April 6, 2012 decision, the ALJ determined that Yates had not been under a disability from November 25, 2008, through the date of the decision. Tr. 31-49. Yates requested review of the ALJ's decision by the Appeals Council. Tr. 30. On August 7, 2013, the Appeals Council denied the request, making the ALJ's decision the final decision of the Commissioner. Tr. 1-7.

## II. Evidence[3]

**A.      Personal, educational and vocational evidence**

Yates was born in 1958. Tr. 56. He obtained his GED in 1980. Tr. 57. Yates's past relevant work includes work as a home health aide and jobs he secured through temp agencies including factory worker, deli worker, fry cook, and painter. Tr. 54-55, 58-59, 65, 262. Working through a temp agency, Yates earned about $8,000 in six months in 2005. Tr. 59. He was incarcerated from 2005-2007 on charges of intimidation, attempted intimidation, and drug possession. Tr. 60. He was married in the past but is now single and lives with this mother. Tr. 56, 65, 70-71.

---

[3] Yates submitted medical records to the Appeals Council after the ALJ's decision that were dated between 1/6/2012 and 1/28/2013. Tr. 434-72. Evidence submitted after the ALJ's decision "cannot be considered part of the record for the purposes of substantial evidence review." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir 2001) (citing *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir 1996)). Under 42 U.S.C § 405(g) additional evidence submitted to the Appeals Council can be a basis for sentence six remand if there is a showing that the evidence is new, material, and that there was good cause for failing to present the evidence at the hearing. *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir 1993). Here, Yates does not present a sentence six remand argument. Therefore it is waived. *See Stiltner v. Comm'r of Social Security*, 244 Fed. Appx. 685, 686 (6th Cir 2007) (holding that plaintiff waived a treating physician argument by not including it in her initial brief).

B.	Medical evidence[4]

1.	Treatment History

Yates mainly received treatment for his physical impairments at St. Vincent Charity Medical Center and Joslin Diabetes Center.[5]

On March 16, 2010, Yates was seen by an eye doctor who stated that Yates suffered from non-proliferative diabetic retinopathy in both eyes.  Tr. 337.  On March 19, 2010 a physician noted that Yates's hypertension was uncontrolled and that he was non-compliant with his diabetes medications.  Tr. 333-35.  Yates was referred to Joslin Diabetes Center for further treatment and was prescribed Lisinopril.  Tr. 335.  When first seen on April 12, 2010, Yates's diabetes was uncontrolled.  Tr. 375.  On April 22, 2010, Yates presented complaining of painful toenails, a callus on his right big toe, and cramping in his legs at night (Tr. 332), however an x-ray of his feet resulted in "no acute findings" (Tr. 416).  On April 30, 2010, Yates's hypertension was controlled, but his diabetes was uncontrolled due to noncompliance with medications.  Tr. 330-31.  On April 30, 2010, a plethysmography revealed evidence of peripheral vascular disease in Yates's feet, but no major arterial insufficiencies.  Tr. 419.   At a routine screening on February 25, 2011, Yates reported no pain.  Tr. 402.

A chest x-ray on May 31, 2011, revealed symptoms typical of chronic obstructive pulmonary disease.  Tr. 415.  An x-ray from June 21, 2011, did not reveal any acute cardiopulmonary findings.  Tr. 433.

---

[4] Treatment history and opinion evidence regarding Yates's mental limitations will not be discussed in-depth as the issues before the Court relate to his physical—not mental—limitations.

[5] Joslin Diabetes Center is affiliated with St. Vincent Charity Medical Center.

3

Nurse Practitioner Elizabeth Daly noted on June 2, 2011, that Yates was hypoglycemic.[6] Tr. 430.  Then, on July 7, 2011, she noted that Yates was not hypoglycemic, but Yates had forgotten to take some of his medication.  Tr. 427.

On October 18, 2011, Yates complained that his blood sugar numbers had been fluctuating, but he had forgotten to take his medication the night before.  Tr. 424.  He also complained of pain in his toes.  Tr. 424.  Yates was hypoglycemic.  Tr. 424.  On November 29, 2011, at a follow-up visit, Yates was not hypoglycemic but he was experiencing night sweats.  Tr. 420.  Yates continued on his current medications and a low-salt diet for hypertension.  Tr. 422.

    **2.**    **Opinion Evidence**

        a.    Treating Nurse Practitioner

*Elizabeth Daly, MSN, CNP*

Nurse practitioner Elizabeth Daly from the Joslin Diabetes Center, St. Vincent Charity Medical Center, submitted a letter dated May 31, 2011.  Tr. 375.  Ms. Daly stated in part that Yates "still has periods of widely fluctuating blood sugars resulting in periods of hyperglycemia and hypoglycemia which can present with multiple safety concerns.  In addition, he has trouble exercising and walking any distance due to his neuropathy and right great toe pain."  Tr. 375.

---

[6] Hypoglycemia is defined as: an abnormally diminished concentration of glucose in the blood, which may lead to tremulousness, cold sweat, piloerection, hypothermia, and headache; when chronic and severe it may cause central nervous system manifestations that in rare cases can even be fatal.  *See* Dorland's Illustrated Medical Dictionary, 31st Edition, 2007, at 915.  Hypoglycemic is defined as: pertaining to, characterized by, or producing hypoglycemia.  Id.  Hyperglycemia is defined as: abnormally increased glucose in the blood, such as in diabetes mellitus. *See* Dorland's Illustrated Medical Dictionary, 31st Edition, 2007, at 901.  Hyperglycemic is defined as: pertaining to, characterized by, or causing hyperglycemia.  Id.

b. Consultative Examiner

*Adi Gerblich, M.D.*

Consultative examining physician Dr. Gerblich examined Yates and prepared a report on October 6, 2010 stating his impressions of Yates's impairments.  Tr. 340-45.  Dr. Gerblich did not find any abnormalities on physical examination, but noted that Yates suffered from diabetes mellitus, depression, hypertension, hypercholesterolemia, and tobacco dependency.  Tr. 341.  In summary Dr. Gerblich stated that Yates had "questionable control of his diabetes" but that his hypertension and depression appeared to be adequately controlled.  Tr. 341.  He also indicated that Yates displayed "[n]o noticeable limitation for sedentary activity."  Tr. 341.

c. State Agency Reviewing

*Walter Holbrook, M.D.*

Dr. Holbrook reviewed Yates's records and completed a residual functional capacity assessment on January 21, 2011.[7]  Tr. 105-07.  Dr. Holbrook opined that Yates was limited in that he could: (1) occasionally lift and/or carry 50 pounds; (2) frequently lift and/or carry 25 pounds; (3) stand and/or walk for a total of 6 hours in an 8 hour work day; (4) sit for a total of 6 hours in an 8 hour work day; and (5) push and/or pull unlimitedly, other than shown, for lift and/or carry.  Tr. 106.  Dr. Holbrook concluded that Yates's "diabetes is severe based on his non-proliferative reinopathy [sic], however it should not impair his exertional abilities."  Tr. 106.  Dr. Holbrook determined that Yates could climb ramps/stairs and balance unlimitedly, and that he could stoop, kneel, crouch, or crawl frequently.  Tr. 106.  However, he opined that Yates could never climb ladders, ropes, or scaffolds.  Tr. 106.

---

[7] Dr. Holbrook stated that he was giving "less than great weight" to the opinion of Dr. Gerblich because "his limitations are beyon [sic] what the totality of the evidence suggests."  Tr. 105.

*Nick Albert, M.D.*

Dr. Albert reviewed Yates's residual functional capacity on July 28, 2011.[8] Tr. 122-23. Dr. Albert opined that Yates was limited in that he could (1) occasionally lift and/or carry 50 pounds; (2) frequently lift and/or carry 25 pounds; (3) stand and/or walk for a total of 6 hours in an 8 hour work day; (3) sit for a total of 6 hours in an 8 hour work day; (4) push and/or pull unlimitedly, other than shown, for lift and/or carry. Tr. 122-23. Dr. Albert concluded that Yates's "diabetes is severe based on his non-proliferative reinopathy [sic], however it should not impair his exertional abilities." Tr. 123. Dr. Albert determined that Yates could climb ramps/stairs and balance unlimitedly, and that he could frequently stoop, kneel, crouch, or crawl. Tr. 123. However, Dr. Albert opined that Yates could never climb ladders, ropes, or scaffolds. Tr. 123.[9]

### C. Testimonial evidence

#### 1. Yates's testimony

Yates was represented and testified at the administrative hearing.[10] Tr. 55-80. Yates testified that his chronic fatigue from high glucose levels and pain in his right big toe keep him from working. Tr. 64, 66. He stated that his toe hurts constantly and prevents him from standing and walking without pain. Tr. 64. Yates stated that, when he is wearing comfortable shoes, he

---

[8] Dr. Albert stated that he was giving little weight to the opinion of Dr. Gerblich because of its "vague nature," and because Dr. Gerblich did not opine what Yates could or could not do. Tr. 122. Dr. Albert also gave little weight to the statements of nurse practitioner Elizabeth Daly due to lack of objective data to support her opinion. Tr. 122.

[9] Prior to Dr. Holbrook and Dr. Albert's reviews, on January 3, 2011, state-agency reviewing physician Michael Colandrea, M.D., opined that Yates's diabetes was a severe impairment on the basis of his non-proliferative retinopathy, but indicated that it should not impair his exertional or postural abilities. Tr. 354. Dr. Colandrea also completed a physical residual functional capacity assessment (Tr. 355-56) about which Yates asserts that Dr. Colandrea was reviewing Dr. Gerblich's assessment from October 6, 2010 (Doc. 17, p. 7). The record itself is not entirely clear as to whose opinion Dr. Colandrea was reviewing. However, in his assessment, Dr. Colandrea disagreed with previously assessed exertional limitations, finding that Yates could lift 50 pounds occasionally and 25 frequently and stand for 6 hours. Tr. 355. Dr. Colandrea also stated that further review was necessary. Tr. 354.

[10] Yates was represented by non-attorney representative, Stephen Eby. Tr. 34.

can stand for no more than 10-15 minutes.  Tr. 75.  He tries to avoid walking and uses a handicap cart when he goes to the store.  Tr. 76.  Yates also testified that he has bad eyesight due to his glucose fluctuations, but that wearing glasses helps.  Tr. 66-67.

Yates testified that he was diagnosed with diabetes in 1996.  Tr. 65.  In April 2010 Yates, who was being treated at Joslin Diabetes Center, was told that his diabetes was changing from Type II to Type I.  Tr. 63.  Yates testified that he was prescribed an insulin pump to help with his diabetes, but he has not been able to get the pump due to lack of health insurance.  Tr. 57-58.

Yates testified that he had been prescribed trazodone for depression.  Tr. 68-69. Yates stated that his chronic fatigue keeps him from playing with his grandson in the park.  Tr. 75.  He testified that people accuse him of being "aggressive or hostile" on a daily basis, which he believes is because he needs the insulin pump.  Tr. 78.

In the course of a typical day, Yates stated that he is a caregiver to his 87 year old mother, who lives with him.  Tr. 70-71.  He testified that he does not do heavy lifting around the house and that his 10 year old grandson helps him get things off the shelves at the grocery store. Tr. 73-74.  When asked to estimate how much he thinks he can lift, Yates stated that he could lift about 15 pounds for about 3-4 minutes and would then have to sit down for 3-4 minutes.  Tr. 77.

Yates testified that, despite a history of substance abuse, he now only drinks and smokes cannabis occasionally.  Tr. 71-72.

    2.    **Vocational Expert's testimony**

Vocational Expert ("VE") Gene Burkhammer testified at the hearing.  Tr. 81-86.  The VE described Yates's past work.  Tr. 81-82.  The home health aide and the industrial spray painter

positions were both medium,[11] semi-skilled jobs (SVP 4),[12] and the prep cook position was a medium, unskilled position (SVP 2).  Tr. 81-82.

The ALJ asked the VE a series of hypothetical questions.  Tr. 82-84.  The ALJ first asked the VE to assume a hypothetical individual with the same age, education, and past work experience as Yates who could lift and carry, push and pull 50 pounds occasionally, 25 pounds frequently; could stand or walk for six out of eight hours with normal breaks; could sit for six out of eight hours with normal breaks; and could perform frequent stooping or kneeling.  Tr. 82.  The VE indicated that the described individual could perform all three of Yates's past jobs.  Tr. 82.

As for the second hypothetical, the ALJ then asked the VE to assume the hypothetical individual was limited to light work with some limitations, that is he could not use ladders, ropes or scaffolds; could perform frequent stooping or kneeling; but had to avoid exposure to hazards such as unprotected heights and machinery.  Tr. 82-83.  The VE indicated that the individual could not do Yates's past work, but there would be other work available to the individual including: (1) housekeeping cleaner, a light, unskilled job (SVP 2) with 2,000 jobs available locally, 30,000 in Ohio, and 500,000 nationally; (2) sales attendant, a light, unskilled job (SVP 2) with 600 jobs available locally, 5,000 in Ohio, and 120,000 nationally; and (3) dietary aide, a light unskilled job (SVP 2) with 600 jobs available locally, 5,000 in Ohio, and 130,000 nationally.  Tr. 83.

The ALJ then asked the VE to assume the individual from the first hypothetical, but the the individual would also be required to avoid concentrated exposure to hazards such as unprotected heights and dangerous machines.  Tr. 83.  The VE testified that his response to the

---

[11] The VE testified that the home health aide job may also have been performed at times at the heavy level.  Tr. 82.

[12] SVP refers to the DOT's listing of a specific vocational preparation (SVP) time for each described occupation.  Social Security Ruling No. 00-4p, 2000 SSR LEXIS 8, *7-8 (Social Sec. Admin. December 4, 2000).   Using the skill level definitions in 20 CFR §§ 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT.  *Id.*

first hypothetical would not change. Tr. 83-84. Next, the ALJ asked the VE if an individual who could not lift more than 10 pounds occasionally and less than 10 pounds frequently could perform sedentary work. Tr. 84. The VE testified that there would be no available jobs for that individual. Tr. 84. Finally, the ALJ asked the VE if Yates's education provided for direct entry into skilled work. Tr. 85. The VE testified that it did not. Tr. 85.

Referring to the ALJ's first two hypothetical questions, Yates's representative asked the VE what would be an acceptable absentee rate. Tr. 84. The VE testified that for all three jobs—housekeeping cleaner, sales attendant, and dietary aide—the normal absentee rate would be no more than two days a month on an ongoing basis. Tr. 84. Yates's representative then asked whether, if the individual would be off task up to 20 percent of the work day, the three stated jobs would still be available. Tr. 84-85. The VE testified that the individual would no longer be able to perform those three jobs. Tr. 85.

### III. Standard for Disability

Under the Act, 42 U.S.C § 423(a), eligibility for benefit payments depends on the existence of a disability. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[13] . . . .

42 U.S.C. § 423(d)(2)(A).

---

[13] "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A).

9

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations.  The five steps can be summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment,[14] claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920;[15] *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  Under this sequential analysis, the claimant has the burden of proof at Steps One through Four.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC and vocational factors to perform work available in the national economy.  *Id.*

---

[14] The Listing of Impairments (commonly referred to as Listing or Listings) is found in 20 C.F.R. pt. 404, Subpt. P, App. 1, and describes impairments for each of the major body systems that the Social Security Administration considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.  20 C.F.R. § 404.1525.

[15] The DIB and SSI regulations cited herein are generally identical.  Accordingly, for convenience, further citations to the DIB and SSI regulations regarding disability determinations will be made to the DIB regulations found at 20 C.F.R. § 404.1501 et seq.  The analogous SSI regulations are found at 20 C.F.R. § 416.901 et seq., corresponding to the last two digits of the DIB cite (i.e., 20 C.F.R. § 404.1520 corresponds to 20 C.F.R. § 416.920).

## IV. The ALJ's Decision

In his April 6, 2012, decision, the ALJ made the following findings:[16]

1. Yates meets the insured status requirements through September 30, 2011.[17] Tr. 36.

2. Yates has not engaged in substantial gainful activity since May 23, 2007, the alleged onset date.[18] Tr. 36.

3. There has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity. The remaining findings address the period(s) the claimant did not engage in substantial gainful activity. Tr. 36.

4. Yates has the following severe impairments: diabetes mellitus, diabetic retinopathy, and hypertension. Tr. 36.

5. Yates does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 39.

6. Yates has the residual functional capacity to perform light work except that he cannot ever climb ladders, ropes, or scaffolds, can frequently stoop and kneel, and must avoid concentrated exposure to workplace hazards, such as unprotected heights and dangerous machinery. Tr. 39.

7. Yates is unable to perform any past relevant work. Tr. 42.

8. Yates was born in 1958 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date. Tr. 43.

9. Yates has at least a high school education and is able to communicate in English. Tr. 43.

10. Transferability of job skills is not material to the determination of disability. Tr. 43.

---

[16] The ALJ's findings are summarized.

[17] Yates states that, contrary to the ALJ's finding, his date last insured is September 30, 2013. Doc. 17, p. 2. Even if the ALJ incorrectly stated Yates's date last insured as September 30, 2011, Yates does not argue that remand is warranted based on that finding.

[18] Although the ALJ's second finding suggests an alleged onset date of May 23, 2007, the ALJ concluded that the alleged onset date was November 25, 2008. Tr. 34.

11

11. Considering Yates's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform.[19] Tr. 43.

12. Yates has not been under a disability, as defined in the Social Security Act, from November 25, 2008, through the date of the decision. Tr. 44.

### V. Parties' Arguments

**A.  Yates's arguments**

First, Yates argues that the ALJ erred in his assessment of the statements of nurse practitioner Elizabeth Daly. Doc. 17, pp. 10. He argues that the ALJ stated that he was giving "some weight" to Ms. Daly's statements, but the ALJ actually did not evaluate her assertions at all or give good reasons for rejecting Ms. Daly's statements regarding Yates's ability to walk. Doc. 17, p. 14.

Second, Yates argues that the ALJ erred in his assessment of the opinion of consultative examiner Dr. Adi Gerblich. Doc. 17, p. 14. He argues that, although the ALJ stated that he was giving "great weight" to Dr. Gerblich's opinion, he ignored Dr. Gerblich's opinion that Yates would have "[n]o noticeable limitation for sedentary activity." Doc. 17, pp. 14-15.

**B.  Defendant's arguments**

In response, the Commissioner asserts that, because a nurse practitioner is neither an acceptable medical source nor a treating source, Ms. Daly's statements are not entitled to controlling weight and her statements cannot establish the existence of a disabling impairment. Doc. 18, p. 10. Therefore, the Commissioner argues that the ALJ properly assessed Ms. Daly's statements. Doc. 18, pp. 10-13.

Next, the Commissioner argues that Dr. Gerblich's statement does not imply that Yates could not perform light exertional work. Doc. 18, p. 15. Further, the Commissioner argues,

---

[19] Consistent with the opinion of the VE, the ALJ listed housekeeping cleaner, sales attendant and dietary aide as jobs that Yates could perform. Tr. 44.

"because the RFC assessment is a finding that may be dispositive on the issue of disability and is an administrative finding on an issue reserved exclusively to the Commissioner, Dr. Gerblich's opinion specifically about Plaintiff's RFC was entitled to no deference or special consideration." Doc. 18, p. 16. Thus, the Commissioner argues that the ALJ did not err in his assessment of the opinion of consultative examiner Dr. Gerblich. Doc. 18, p. 15.

## VI. Law & Analysis

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). Accordingly, a court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

A.      **The ALJ properly assessed the opinion of Yates's treating nurse practitioner**

Elizabeth Daly, MSN, CNP is not a physician. As a nurse practitioner, Ms. Daly's statement cannot establish the existence of a medically determinable impairment. *See* SSR 06-3p., 2006 WL 2329939 (August 9, 2006). Therefore, the ALJ correctly found that she was not an "accepted [sic] medical source,"[20] (Tr. 41) and the ALJ was not required to provide controlling weight to Ms. Daly's assessments. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997) (an ALJ has discretion to determine the weight to give to opinions from "other sources").

Yates argues that the "ALJ's decision contains no evaluation of [Ms. Daly's] opinion whatsoever." Doc. 17, p. 12. However, even though Ms. Daly is not an acceptable medical source, the ALJ did in fact consider her opinion as an "other source" opinion and explained his reasons for the weight provided.  20 C.F.R. § 404.1513; SSR 06-03P, 2006 WL 2329939.

The ALJ stated,

> As for the opinion evidence, the claimant submitted a letter from Elizabeth Daly, MSN, CNP dated May 31, 2011. Ms. Daly indicated that the claimant has a history of uncontrolled diabetes, hypertension, hyperlipidemia, B12 deficiency anemia, insomnia, peripheral neuropathy, and chronic right great toe pain. She indicated that his diabetes has improved since April 12, 2010, with medication management and education on his disease. He checks his blood sugar up to five times per day, although he continues to have fluctuating blood sugar. Ms. Daly indicated that the claimant has difficulty walking and exercising due to neuropathy and right great toe pain. (Ex. 11F, p. 1). I give some weight to this opinion as the statement of a non-accepted medical source that is familiar with the claimant's condition and functional ability. However, the opinion, as the statement of a nurse practitioner, cannot establish the presence of a medically determinable impairment.

---

[20] Acceptable medical sources are-- (1) Licensed physicians (medical or osteopathic doctors); (2) Licensed or certified psychologists; (3) Licensed optometrists; (4) Licensed podiatrists; and (5) Qualified speech-language pathologists.  20 C.F.R. § 404.1513(a).

14

Tr. 41.  As reflected in his decision, the ALJ clearly discussed and considered Ms. Daly's opinion.  Further, this discussion is not "circular" as Yates contends (Doc. 17, p. 12); it is simply the ALJ's explanation for affording Ms. Daly's statements "some weight."

Yates also argues that the ALJ failed to apply the applicable factors for weighing opinions which include elements such as length of treatment relationship and consistency of the opinion with other evidence.  Doc. 17, pp. 11-12. (relying on *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007)); *see also* 20 C.F.R § 404.1527(c) and SSR 06-03P, 2006 WL 2329939, *4 (factors which may be considered when evaluating a medical opinion).  Although the ALJ may not have provided a detailed analysis of the applicable factors, the Court finds Yates's argument unpersuasive.  Here, the ALJ recognized, considered, and provided "some weight" to Ms. Daly's statements.  The ALJ discussed and considered Ms. Daly's opinion in accordance with SSR 06-03p which states, "the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or a subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03p, 2006 WL 2329939, * 6.

The ALJ did consider the nature of the relationship between Ms. Daly and Yates when deciding how much weight to give her statements.  Moreover, nothing in Ms. Daly's statement indicates that Yates is unable to work.[21]  It is apparent that the ALJ gave serious consideration to Ms. Daly's statements as he discussed her May 2011 letter in detail.

---

[21] This fact distinguishes this case from *Cruse*, where the nurse practitioner stated that the claimant could not work.  502 F.3d at 540-41.  Further, even if Ms. Daly's statement that Yates has difficulty walking and exercising implied that Yates cannot perform work at the light level, the RFC determination is reserved to the Commissioner.  *See* 20 C.F.R. §§ 404.1546(c), 404.1527(e)(2).

15

Further, the ALJ's decision to give only "some weight" to Ms. Daly's statement that Yates had difficulty walking is consistent with the record as a whole because other evidence supports the ALJ's RFC finding that Yates could perform light work.  For example, in a function report completed on September 12, 2010, Yates stated that he can drive a car and use public transportation, has no problems with personal care, can prepare simple meals, can shop and go to church, and can walk a quarter mile before needing to rest.  Tr. 40 (referencing Exhibit 5E).  Further, state-agency reviewing physicians stated that Yates's "diabetes is severe based on his non-proliferative reinopathy [sic], however it should not impair his exertional abilities."  Tr. 106, 123.

Consistent with his obligations under the Social Security Act, the ALJ clearly considered Ms. Daly's statements, and the ALJ's decision with respect to the weight provided to her assessment is sufficiently clear and is supported by substantial evidence.  Accordingly, the undersigned finds no error in the ALJ's consideration and treatment of Ms. Daly's assessment.

**B.     The ALJ properly assessed the opinion of Yates's consultative examiner**

As a one-time examining physician, Dr. Gerblich did not have an ongoing treatment relationship with Yates and therefore his opinion is not entitled to controlling weight as the opinion of a treating physician would be.  See *Kornecky v. Comm'r of Soc. Sec*, 167 Fed. Appx. 496, 507 (6th Cir. 2006); *Daniels v. Comm'r of Soc. Sec.,* 152 Fed. Appx. 485, 490 (6th Cir. 2005).  Notwithstanding the fact that Dr. Gerblich was not a treating physician, the ALJ did consider and evaluate his opinion in accordance with the Regulations.  The ALJ considered the consistency of Dr. Gerblich's opinion with the record as a whole and, after doing so, the ALJ gave "great weight" to Dr. Gerblich's opinion.  Tr. 41.

Yates does not contend that the ALJ did not give appropriate weight to Dr. Gerblich's opinion, but argues that, because of the weight provided, the ALJ was required to restrict Yates to sedentary work based on Dr. Gerblich's statement that Yates had "[n]o noticeable limitation for sedentary activity." Doc. 17, p. 14. Yates alleges that, by negative implication, Dr. Gerblich meant that Yates "*did* have limitations for *higher* exertional levels than sedentary, although the Doctor did not specify further what those limitations were" (Doc. 17, p. 14) and asserts that he is prejudiced by the ALJ's failure to adopt a sedentary RFC because, if he had been limited to sedentary work, a finding of disability under Medical-Vocational Rule 201.06 (20 C.F.R. Part 404) would have been required (Doc. 17, pp. 15).

Plaintiff's argument is in essence an attempt to have this Court interpret medical opinion evidence considered and weighed by the ALJ, which the Court cannot do. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (a court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility").[22] Moreover, Plaintiff fails to point to any other findings in Dr. Gerblich's opinion to suggest that Dr. Gerblich's statement meant that Yates could only perform work at the sedentary level. As noted by the ALJ, Dr. Gerblich indicated that Yates would need surgery on his toe, but he also indicated that Yates's eyesight was good as corrected, he had normal range of motion in his joints, his upper and lower body strength and his hand grasp and manipulation were normal, and he could walk a block and climb a flight of stairs. Tr. 41, 340-45. The ALJ clearly outlined all of Dr. Gerblich's findings, which as a whole support the RFC finding that Yates should be limited to light exertional capacity. Tr. 41.

---

[22] Here, even if Dr. Gerblich's statement was read as Yates contends it should be, the RFC determination is reserved to the Commissioner. Thus, the ALJ was not obligated to accept that opinion in the formation of the RFC. *See Ford v. Comm'r of Soc. Sec.,* 114 Fed. Appx. 194, 198 (6th Cir. 2004) (citing 20 C.F.R. §§ 404.1527(e)(2), 404.1546).

17

Consequently, the ALJ properly considered Dr. Gerblich's opinion and the RFC is supported by substantial evidence.

## VII. Conclusion

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**.


Dated:  August 15, 2014

/s/ Kathleen B. Burke
Kathleen B. Burke
United States Magistrate Judge